# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| KENNETH KIESZKOWKSI, ) | |
| ) | |
| Plaintiff, ) | Case No. 09 C 01936 |
| ) | |
| v. ) | Judge Edmond E. Chang |
| ) | |
| PERSONALCARE INSURANCE ) | |
| OF ILLINOIS, INC., a wholly owned ) | |
| subsidiary of Coventry Health Care, Inc., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kenneth Kieszkowski brought this action pursuant to the Employee Retirement Income Security Act of 1974 (ERISA) seeking reinstatement of his health benefits by Defendant PersonalCare Insurance. 29 U.S.C. § 1132(a)(1)(B).[1] The parties filed cross-motions for summary judgment. R. 25, 27. For the reasons discussed below, PersonalCare's motion is granted and Kieszkowski's motion is denied.

**I.**

In February 2006, Kieszkowski became an employee of E.J. Equipment and enrolled in E.J. Equipment's group health plan. R. 26 , Pl.'s Stmt. of Facts (PSOF) ¶ 7. At the time, the E.J. Plan was administered by Group Administrators, Ltd. *Id.* In 2007, E.J. Equipment switched health insurance companies and retained PersonalCare as its new administrator for the E.J. Plan. R. 29, Def.'s Stmt. of Facts (DSOF) ¶ 1. To remain an E.J. Plan participant after the transfer of the Plan to PersonalCare,

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

Kieszkowski was required to complete PersonalCare's enrollment application and change form. DSOF ¶ 2. The form required Kieszkowski to disclose his medical history, including whether he had ever received treatment for diabetes, or any kidney or liver disorders. *Id.* Kieszkowski checked the box marked "no." *Id.*; R. 29-3, Def.'s Exh. B.

PersonalCare's Evidence of Coverage states that a member's "coverage shall terminate . . . [for] knowingly misrepresenting or giving false information on any enrollment application form that is material to PersonalCare's acceptance of such application." R. 29-2, Def.'s Exh. A § 4.1. The enrollment form requires the member to read and sign that he "understand[s] that [his] membership may be cancelled for . . . fraud or material misrepresentation in enrollment or in the use of services of facilities." Def.'s Exh. B. Kieszkowski completed his enrollment form in October 2007, and his health benefits with PersonalCare went into effect on January 1, 2008. PSOF ¶ 8.

In June 2008, PersonalCare contacted one of Kieszkowski's physicians, Dr. David Sutherland, as part of its monthly audit of all new policies issued by PersonalCare, and requested that Dr. Sutherland send PersonalCare copies of Kieszkowski's medical records from the past year. DSOF ¶ 4. After reviewing Kieszkowski's records, PersonalCare learned that Kieszkowski had been treated for several serious health conditions, including Type II diabetes, hepatitis C, and a renal mass anteriorly within one of his kidneys. *Id.* On June 27, PersonalCare issued a letter to Kieszkowski, notifying him that his failure to disclose this information on his enrollment form constituted a material misrepresentation. DSOF ¶ 5; R. 29-4, Def.'s Exh. C. As a result, PersonalCare rescinded Kieszkowski's coverage, retroactive to the

previous effective date of January 1, 2008. Def.'s Exh. C.

In July 2008, Kieszkowski's attorney contacted PersonalCare and requested that PersonalCare send him a copy of Kieszkowski's claim file. PSOF ¶ 19. Kieszkowski received the file from PersonalCare on August 5. PSOF ¶ 22. Kieszkowski's counsel responded by letter, stating that PersonalCare's decision to terminate his health benefits violated the Health Insurance Portability and Accountability Act of 1996 (HIPAA) because it unlawfully excluded Kieszkowski due to pre-existing conditions and, in any event, PersonalCare was fully aware of Kieszkowski's prior medical treatment. R. 29-6, Def.'s Exh. E. Kieszkowski states that this letter served as his appeal of PersonalCare's decision to terminate his coverage. PSOF ¶ 23. PersonalCare disputes that this letter served as an appeal of its June 2008 determination and, as discussed below, argues that Kieszkowski failed to exhaust his administrative remedies before filing the instant lawsuit on March 30, 2009. R. 34, Def.'s Resp. PSOF ¶ 23.[2]

## II.

During the discovery stage, the district judge previously assigned to this case determined that the abuse of discretion standard of review applies. R. 18; *see also* R. 32 (Pl.'s Br.) at 1. Kieszkowski urges the Court to reconsider this decision, and use a *de novo* standard of review when evaluating PersonalCare's termination of benefits.

---

[2]PersonalCare's response states that Kieszkowski never appealed its October 13, 2008 determination. The Court assumes that PersonalCare intended to reference the date PersonalCare terminated Kieszkowksi's benefits, which was June 27, 2008. *See* R. 29-4, Def.'s Exh. C.

3

Pl.'s Br. at 1. "The standard of judicial review in a civil action under 29 U.S.C. § 1132(a)(1)(B) depends upon the discretion granted to the plan administrator in the plan documents." *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 810 (7th Cir. 2009) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. "The reservation of discretion must be communicated clearly in the language of the plan, but the plan need not use any particular magic words." *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 619 (7th Cir. 2008) (citing *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000)). The Seventh Circuit has repeatedly emphasized that "the critical question is notice: participants must be able to tell from the plan's language whether the plan is one that reserves discretion for the administrator." *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 637 (7th Cir. 2005); *see also Gutta*, 530 F.3d at 619; *Herzberger*, 205 F.3d at 332.

Here, the E.J. Plan states that "PersonalCare reserves the right to adopt any and all reasonable policies, procedures, rules and interpretations as may be necessary to promote the uniform, consistent, and efficient administration of this [plan]." Def.'s Exh. A § 15.11. PersonalCare contends that this language "clearly provides that PersonalCare, as the plan administrator, holds broad discretion in administering the E.J. Plan," and therefore the Court's review should be the deferential arbitrary and

4

capricious standard. R. 29 (Def.'s Br.) at 5. Kieszkowski counters that the *de novo* standard of review is proper because the language in § 15.11 "falls woefully below the necessary wording as set forth by the Seventh Circuit in [*Herzberger* and *Diaz*]." R. 32 (Pl.'s Resp. Br.) at 1.

To be sure, if what this Court was reviewing was a denial of benefits based on medical evidence, there is some reason to doubt that the arbitrary and capricious standard of review applies. The Seventh Circuit has admonished employers on how to create deferential review: "[i]f a plan wishes to insulate its decision to deny benefits from plenary review, the surest way to do so . . . is by including language that either mimics or is functionally equivalent to the 'safe harbor' language [suggested by the court]: 'Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them.'" *Diaz*, 424 F.3d at 637 (quoting *Herzberger*, 205 F.3d at 331). Although the Seventh Circuit has "strongly recommended that plans adopt this language, its absence does not compel the conclusion that the administrator does *not* have discretion." *Diaz*, 424 F.3d at 637. Thus, Kieszkowski incorrectly characterizes the Seventh Circuit's safe harbor language as "necessary." This exact language is not mandatory. *Herzberger*, 205 F.3d at 331 ("[T]here are no 'magic words' determining the scope of judicial review of decisions to deny benefits."). Rather, courts must examine the plan's language and determine what message the plan conveys to the employee. Plans without discretion "reflect the fact that the applicant must meet the prescribed requirements of the plan, through appropriate evidence." *Diaz*, 424 F.3d at 639. Plans with discretion "communicate the idea that the

5

administrator not only has broad-ranging authority to assess compliance with pre-existing criteria, but also has the power to interpret the rules, to implement the rules, and even to change them entirely." *Diaz*, 424 F.3d at 639.

The language in § 15.11 of the E.J. Plan does not fit neatly into the latter category, as it only states that PersonalCare reserves the right to "adopt" reasonable rules and interpretations that are necessary for the "administration" of the Plan. The word discretion, or some form of the word, is not used; indeed, the provision does not even directly state that it covers decisions on whether an employee is entitled to benefits. The Plan does not clearly vest PersonalCare with discretionary authority to determine whether an employee is entitled to benefits and/or construe any disputed terms of the Plan. Section 15.11 is insufficient to give the employee adequate notice that the plan administrator "has the latitude to shape the application, interpretation, and content of the rules in each case." *Diaz*, 424 F.3d at 639-40. Thus, if the Court had to decide this issue in the first instance, without the restrictions of law, the proper standard of judicial review in this case would be *de novo*. *Firestone*, 489 U.S. at 115.

But the standard of review does not make a difference in this case. As PersonalCare points out, the context of this case is different from the typical benefits denial case. As explained further below, whether the standard is *de novo* or arbitrary-and-capricious, the Court would not overturn PersonalCare's decision. Kieszkowski's benefits were terminated because he made, PersonalCare argues, a misrepresentation on his enrollment form. Unlike many of the cases that grapple with the standard of review issue, Kieszkowski was not denied benefits based on PersonalCare's review and

interpretation of medical evidence. *See, e.g., Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 859 (7th Cir. 2009); *Gutta*, 530 F.3d at 616; *Semien*, 436 F.3d at 808; *Diaz*, 424 F.3d at 636. Rather, PersonalCare terminated Kieszkowski's benefits after discovering that he falsely reported that he had never been treated for diabetes or a kidney or liver disorder. The plain language of the E.J. Plan clearly states that PersonalCare *shall* terminate coverage in the event a member knowingly misrepresents or gives false information on any enrollment application form that is material to PersonalCare's acceptance of such application. Def.'s Exh. A § 4.1. Thus, the central issue in this case is whether Kieszkowski's misrepresentation – which he does not dispute making – was material to PersonalCare's decision to accept his application. The degree of deference PersonalCare had to construe the terms of the E.J. Plan is not as important here because there is no question that the Plan documents grant PersonalCare the right to terminate benefits upon discovering that a material misrepresentation was made on an enrollment form. *See* Def.'s Exh. A § 4.1; Def.'s Exh. B.

### III.

### A.

Turning to the merits, in Illinois, an insurance company may deny coverage because of a misrepresentation in an application for insurance if the misrepresentation (1) shall have been made with actual intent to deceive, or (2) materially affects either the actual acceptance of the risk or the hazard to the company. 215 ILCS 5/154; *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 695 (7th Cir. 1991). In this case,

7

PersonalCare argues that summary judgment is appropriate because there is no genuine dispute that Kieszkowski materially misrepresented his prior medical history on his insurance application. Def.'s Br. at 7. The Court agrees.

Kieszkowski admits that he made a misrepresentation on the enrollment form he submitted to PersonalCare in October 2007. Pl.'s Resp. Br. at 5. It is undisputed that Kieszkowski had in fact received medical treatment for diabetes and kidney and liver problems at the time he filled out the enrollment form, yet he marked "no" in response to the question regarding such treatment. Kieszkowski's failure to disclose his prior diagnoses and treatment was a misrepresentation within the meaning of 215 ILCS 5/154.

In addition, PersonalCare has submitted evidence that Kieszkowski's misrepresentation materially affected its acceptance of the risk. 215 ILCS 5/154. "A misrepresentation is material if reasonably careful and intelligent persons would regard the facts as stated to substantially increase the chances of the event insured against, so as to cause a rejection of the application." *Methodist Med. Ctr. of Ill. v. Am. Med. Sec. Inc.*, 38 F.3d 316, 320 (7th Cir. 1994). Here, PersonalCare provided the affidavit of John O'Grady, the lead underwriter for the E.J. Plan. R. 37, Def.'s Exh. F; *see N. Life Ins. Co. v. Ippolito Real Estate P'ship*, 601 N.E.2d 773, 780 (Ill. App. Ct. 1992) (insurer may rely upon the underwriter's testimony in establishing the materiality of a misrepresentation). According to O'Grady, had Kieszkowski disclosed that he had been treated for diabetes, hepatitis C, and a mass within one of his kidneys, PersonalCare would have been required to inquire further into these

conditions before accepting Kieszkowski's application for coverage or setting the group premium rate for the E.J. Plan. Def.'s Exh. F ¶ 6. O'Grady stated that the group premium rate for the E.J. Plan would have been significantly higher had Kieszkowski disclosed these medical conditions on his enrollment form. *Id.* ¶ 8.

Kieszkowski argues that his misrepresentation was not material because his omission was inadvertent and it was reasonable for him to believe that PersonalCare already had knowledge of his prior medical conditions. Pl.'s Br. at 10; Pl.'s Resp. Br. at 5. Kieszkowski's argument misses the mark. The issue here is whether Kieszkowksi's failure to disclose his prior medical conditions substantially increased the risk assumed by PersonalCare. *See N. Life Ins.*, 601 N.E.2d at 779-80. "Although the materiality of a misrepresentation is ordinarily a question of fact, summary judgment is appropriate where the misrepresentation is of such a nature that no one would dispute its materiality." *Methodist Med. Ctr.*, 38 F.2d at 320. Here, Kieszkowski fails to show that there is a genuine dispute regarding the materiality of his misrepresentation.

First, Kieszkowski's reliance on what he says is his innocent state of mind is beside the point. Under Illinois law, a material misrepresentation "will void an insurance contract regardless of whether the misrepresentation was made innocently or with an intent to deceive." *Methodist Med. Ctr.*, 38 F.3d at 320; *St. Paul Reinsurance Co. v. Williams & Montgomery, Ltd.*, 2001 WL 1242891, at *6 (N.D. Ill. Oct. 17, 2001) ("An honest mistake will not excuse the insured for providing false or misleading information on its insurance application . . . It is enough that the failure [to disclose]

9

occurred."). The language of the governing statute makes a clear distinction between misrepresentations made with "actual intent to deceive" as one basis for voiding a policy, and misrepresentations that "materially affect[] either the acceptance of the risk or the hazard assumed by the [insurance] company" as the second basis for voiding the policy. 215 ILCS 5/154. Given the textual absence of a deceitful-intent requirement for the second basis for voiding a policy, it is not surprising that the case law interpreting § 154 does not require a culpable state of mind for material misrepresentations.

Second, Kieszkowski's assertion that PersonalCare already had knowledge of his medical conditions does not undermine the materiality of the misrepresentation. As an initial matter, Kieszkowski offers no evidence that PersonalCare had knowledge of his medical conditions. Kieszkowski states that he submitted claims for medical treatment related to his diabetes, hepatitis C, and kidney mass to the E.J. Plan's *previous* insurer, Group Administrators. PSOF ¶¶ 7, 10. He makes no connection between Group Administrators and PersonalCare, and there is no reason to believe that PersonalCare, a separate insurance company, inherited any of Group Administrators's files or had access to claims filed by E.J. employees before January 1, 2008. Indeed, it was an audit that prompted PersonalCare to ask for Kieszkowski's medical records.

More importantly, even if PersonalCare had Group Administrators's medical or claims files sitting in a storage room or computer somewhere, the misrepresentation would still be material. PersonalCare was entitled to rely on the representations on the application form in order to make a prompt decision on accepting employees into the

Plan. Kieszkowski's argument would in effect place on PersonalCare a duty to check every representation about prior medical history against transferred records and files before enrolling an employee. But the very purpose of the form is to permit and prompt PersonalCare to further investigate the insurance risk presented by applicant-employees if there is a "yes" answer to a medical-conditions question. Adopting Kieszkowski's view of materiality would grind prompt enrollment to a halt. The Court concludes that Kieszkowski's misrepresentation was material as a matter of law.

In his own summary-judgment motion, Kieszkowski contends that PersonalCare's decision to terminate his benefits violated HIPAA, as well as the fiduciary duties it owed Kieszkowski as the E.J. Plan's administrator. Pl.'s Br. at 7-9. These arguments are unpersuasive for several reasons. As already discussed, PersonalCare terminated Kieszkowski's benefits because he made a material misrepresentation on his enrollment form. Kieszkowski's assertion that PersonalCare excluded him due to his pre-existing medical conditions despite the fact that he had sufficient creditable coverage with a prior insurer does not address the actual basis for PersonalCare's termination decision: whether Kieszkowski's misrepresentation substantially increased the risk assumed by PersonalCare, thereby making it "material" under Illinois law. And while Kieszkowski claims that PersonalCare was not justified in its decision to rescind his coverage, he fails to put forth any evidence demonstrating that this is in fact the case. In contrast, PersonalCare has shown that Illinois law specifically provides that insurers may terminate coverage upon discovering that a member materially misrepresented his medical condition on an

11

application for insurance. This principle is clearly reflected in the E.J. Plan's documents, which Kieszkowski signed. Despite his broad allegation that PersonalCare breached its fiduciary duty by terminating his coverage, Kieszkowski fails to show that PersonalCare was required to take a different course of action here.

**B.**

PersonalCare also argues in the alternative that Kieszkowski failed to exhaust his administrative remedies. Def.'s Br. at 8-11. ERISA does not explicitly require claimants to exhaust their administrative remedies before filing suit in federal court. 29 U.S.C. § 1132(a)(1)(B); *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011). However, the Seventh Circuit has interpreted the statute as requiring exhaustion of administrative remedies as a prerequisite to bringing suit "because ERISA directs employee benefit plans to provide adequate written notice of the reasons for denials of claims by plan participants and to create procedures for the review of such denials of claims." *Edwards*, 639 F.3d at 360; *see* 29 U.S.C. § 1133. Moreover, the requirement of exhaustion of administrative remedies in ERISA cases promotes informal, non-judicial resolution of disputes, and helps to prepare the ground for litigation in the event that case administrative dispute resolution proves unavailing. *Edwards*, 639 F.3d at 360-361.

Kieszkowski claims that he did appeal, via an October 13, 2008 letter, PersonalCare's decision to terminate his benefits. PSOF ¶ 23. However, looking at his October 13 letter, as well as all of the other correspondence between Kieszkowski and PersonalCare, it is evident that Kieszkowski never formally participated in the appeal

12

process. The E.J. Plan provides that a member may not bring a cause of action in a court "unless and until all administrative remedies set forth in this Agreement have first been exhausted." Def.'s Exh. A § 15.7. The "Agreement," or Evidence of Coverage, states:

> An appeal is a request by a Member or a Member's authorized representative for reconsideration of an adverse benefit determination of a health service request or a benefit that the Member believes he or she is entitled to receive. Appeals must be submitted within one hundred eighty (180) days of the date the adverse benefit determination was made.

Def.'s Exh. A. § 10.2.

In a letter dated July 24, 2008, Kieszkowski's attorney stated that Kieszkowski was considering *whether* to appeal PersonalCare's decision to deny his application for benefits. Def.'s Exh. G at PC65 ("In order for us to determine whether to appeal . . ."). Kieszkowski asked for documents from PersonalCare to help him decide whether to pursue an appeal. *Id.* Kieszkowski also asked that the deadline for filing his potential appeal be extended to 180 days from the time he received the documents. *Id.* at PC66. PersonalCare responded to Kieszkowski's document requests on August 5. Def.'s Exh. G at PC70. The next exchange took place in October. In a letter dated October 13, 2008, Kieszkowski's attorney stated that PersonalCare wrongfully terminated Kieszkowski's benefits in violation of HIPAA and, furthermore, was fully aware of Kieszkowski's prior medical conditions at the time he submitted his application for benefits. Def.'s Exh. E. The October 13 letter does not specify whether Kieszkowski intended to file an appeal, nor does it ask PersonalCare to reconsider its decision to terminate Kieszkowski's benefits due to the misrepresentation. Instead, the letter outlines Kieszkowski's

13

attorney's legal assessment of the situation and requests PersonalCare to provide legal authority showing that its termination did not violate HIPAA. *Id.* The letter does not address the misrepresentation on Kieszkowski's enrollment form, which, as discussed, was the actual basis for PersonalCare's termination.

Moreover, Kieszkowski's October letter was addressed to Linda L. Laugges, Director of Regulatory Compliance at PersonalCare. *Id.* Laugges's June 27 letter to Kieszkowski, in which Kieszkowski was notified of PersonalCare's decision to terminate as well as the specific reasons for the termination, clearly states that an appeal must be sent to the attention of PersonalCare's Appeals Department. Def.'s Exh. C. The June 27 letter also instructed Kieszkowski to "include written comments, documents, and other information relevant to the appeal" in his written request for review. *Id.* Kieszkowski does not point to any correspondence he had with PersonalCare's Appeals Department, nor does the October 13 letter ask PersonalCare to review its decision to terminate his coverage pursuant to § 4.1 of the E.J. Plan. For these reasons, the Court concludes that Kieszkowski's October 13 letter did not constitute an appeal of PersonalCare's adverse decision.

It is within the Court's discretion to decide whether or not to require exhaustion. *Edwards*, 639 F.3d at 631. "An ERISA plaintiff's failure to exhaust administrative remedies may be excused where there is a lack of meaningful access to review procedures, or where pursuing internal plan remedies would be futile." *Edwards*, 639 F.3d at 631. Relying on the latter exception, Kieszkowski argues that "further appeal would have been futile as evidenced by PersonalCare's claim determination and

subsequent correspondence." Pl.'s Resp. Br. at 6. Specifically, he claims that letters from PersonalCare dated June 27 and October 28 "effectively precluded Kieszkowski from providing any further more detailed appeal since it was obvious that any further effort to appeal the matter was foreordained to fail." *Id.* at 7. The Court disagrees.

"Futility is demonstrated by showing that it is 'certain' a plaintiff's claim will be denied by the plan administrator." *Ruttenberg v. United States Life Ins. Co.*, 413 F.3d 652, 662 (7th Cir. 2005) (quoting *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1238 (7th Cir. 1997)). The correspondence from PersonalCare does not demonstrate that it would have denied Kieszkowski's appeal. First, the letter dated June 27 was PersonalCare's initial notice to Kieszkowski that it was rescinding his benefits due to the material misrepresentation on his enrollment form. This letter also notified Kieszkowski of his right to appeal the decision and laid out the specific steps he must take to do so. Upon receiving Kieszkowksi's document requests on July 30, PersonalCare promptly produced the Fraud and Abuse Committee file and several other documents relevant to Kieszkowski's requests. Def.'s Exh. G at PC70. The next correspondence from PersonalCare was in response to Kieszkowski's October 13 letter. *Id.* at PC238. In a letter dated October 28, PersonalCare explained that Kieszkowski's benefits were terminated because he failed to provide material facts related to his prior medical conditions on his enrollment form. PersonalCare also responded that HIPAA is not applicable to Kieszkowski's case, and neither HIPAA nor PersonalCare's alleged knowledge of Kieszkowski's prior medical conditions are relevant to the fact that Kieszkowski misrepresented his medical history on his enrollment form. This evidence

15

does not support Kieszkowski's assertion that his claim would be denied on appeal. A claim of futility cannot be based on mere allegations or conjecture. *Robyns*, 130 F.3d at 1237; *see also Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 680 (7th Cir. 2002) ("When a party has proffered no facts indicating that the review procedure that he initiated will not work, the futility exception does not apply."). For these reasons, the Court declines to excuse Kieszkowski's failure to exhaust based on the futility exception. Thus, not only is PersonalCare entitled to summary judgment on the merits, the Court would also grant summary judgment based on Kieszkowski's failure to exhaust his administrative remedies.

## C.

Another issue is worth noting because it involves whether the case is moot. In the federal courts, "[e]very . . . final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief its pleadings." Fed. R. Civ. P. 54(c); *Back Doctors Ltd. v. Metro. Prop.& Cas. Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011). In his complaint, Kieszkowski requested that the Court enter judgment in his favor and order PersonalCare to reinstate his benefits; he did not specifically seek damages.[3] R. 1, Compl. at 7. Kieszkowski, unfortunately, passed away on September 7, 2010. R. 38 ¶ 1. Kieszkowski's sister, Mary Nemitz, was substituted as the plaintiff in this case pursuant to Federal Rule of Civil Procedure 25. R. 43.

Although neither party has raised the issue about what relief would be proper

---

[3]Kieszkowski's prayer for relief includes a request for "any and all other relief to which [he] may be entitled." Compl. at 7.

16

now that Kieszkowski is deceased, the Court would have had the authority under Rule 54(c) to order any relief to which Kieszkowski would have been entitled, even if not specifically requested by Plaintiff. As the Seventh Circuit has noted, "Rule 54(c) has been liberally construed, leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved." *Felce v. Fiedler*, 974 F.2d 1484, 1501 (7th Cir. 1992) (internal quotation omitted). Thus, had Kieszkowski been the prevailing party in this action, the Court could have awarded Plaintiff damages in the amount of medical costs that were not covered by PersonalCare and there remained a live case or controversy (PersonalCare has not raised any argument that medical costs would not have been recoverable by Kieszkowski's representative). In any event, PersonalCare prevailed.

**IV.**

ERISA provides that the Court may, in its discretion, award reasonable attorney's fees to either party. 29 U.S.C. § 1132(g)(1). "'[A] fee claimant need not be a prevailing party to be eligible for an attorney's fees award under § 1132(g)(1)' . . . Instead, . . . a claimant must show 'some degree of success on the merits before a court may award attorneys fees.'" *Pakovich v. Verizon Ltd. Plan*, – F.3d –, 2011 WL 3010497, at *5 (7th Cir. July 22, 2011) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2156 (2010)). Once it is determined that a party is eligible for fees, the second step is to determine whether fees are appropriate. *Id.* at *5. To award fees, "courts must find the non-prevailing party's litigation position was not substantially justified." *Id.* at *5 (quotation omitted). Although the Seventh Circuit has used a five-factor test to

17

inform the "substantially justified" standard,[4] the inquiry focuses on whether the non-prevailing party's litigation position was substantially justified and taken in good faith or whether it was out to harass its opponent. *Pakovich*, 2011 WL 3010497, at *5 (quotation omitted).

PersonalCare argues that attorney's fees and costs are appropriate in this case because Kieszkowski knew that his federal lawsuit was improper in light of his failure to exhaust his administrative remedies. Def.'s Br. at 12-13. PersonalCare claims that Kieszkowski did not file this action in good faith and misleadingly alleged exhaustion in his complaint.[5] Def.'s Br. at 12-13. Kieszkowski responds that he did not bring this lawsuit for the purpose of harassing PersonalCare and, in any event, fees are rarely awarded against plaintiffs in ERISA cases. Pl.'s Resp. Br. at 8; *see, e.g., Leigh v. Engle*, 727 F.2d 113, 140 n.39 (7th Cir. 1984) ("Even where the plaintiff does not prevail on his or her claim, an award of attorneys' fees against an ERISA plaintiff will rarely be justified.") (citation omitted).

There is of course no doubt that PersonalCare achieved "some degree of success

---

[4]The five factors include: (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Pakovich*, 2011 WL 3010497, at *5 n.2 (citing *Herman v. Cent. States, Se. & Sw. Areas Pension Fund*, 423 F.3d 684, 696 (7th Cir. 2005)).

[5]The Complaint alleges that "PersonalCare failed to perform a full and fair review, failed to give consideration to all aspects of Kieszkowski's claim for coverage under the Plan, and has refused to reverse its decision to rescind Plaintiff's coverage. All avenues of pre-suit have now been exhausted." Compl. ¶¶ 18-19.

on the merits," as the Court has decided to award summary judgment in its favor. The question is whether Kieszkowski was substantially justified in bringing this lawsuit. The Court concludes that the facts and circumstances in this case do not warrant a fee award. On the merits, Kieszkowski was able to present a non-frivolous argument, and was probably correct that a *de novo* standard of review applied. And although the Court has determined that Kieszkowski failed to exhaust his administrative remedies, Kieszkowski's position on the issue was not so clearly wrong as to be indicative of harassment or bad faith. The Court denies PersonalCare's request for fees and costs.

**V.**

For the reasons stated above, PersonalCare's motion for summary judgment [R. 25] is granted, and Kieszkowski's motion for summary judgment is denied [R. 27].

ENTERED:

/s/ Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 12, 2011